**CLEVELAND CHIROPRACTIC COL-LEGE, a corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

**No. 17086.**

United States Court of Appeals
Eighth Circuit.

Jan. 17, 1963.

V. E. Phillips, Kansas City, Mo., for petitioner.

V. E. Youngman, Attorney, Department of Justice, Washington, D. C., John B. Jones, Jr., Acting Asst. Atty. Gen., Washington, D. C., Lee A. Jackson, David O. Walter, Alan D. Pekelner, Attorneys, Department of Justice, Washington, D. C., on the brief, for respondent.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

On this petition to review a decision of the Tax Court (unreported), the salient questions presented are whether petitioner had net earnings in the years 1948, 1950 and 1951 and whether it was entitled to a tax-exempt status during 1948–52 under Section 101(6) of the Internal Revenue Code of 1939. A subsidiary question is whether petitioner was rightfully subjected to additions under Section 293(a) of the 1939 Code on the amount of the deficiency income tax imposed on it.

Our review is limited to whether there is "substantial evidence upon the record as a whole" to sustain the Tax Court's decision and that it "is not against the clear weight of the evidence or induced by an erroneous view of the law." Arc Realty Co. v. Commissioner, 295 F.2d 98, 101–102 (8 Cir., 1961).

Since we find no such error it would serve no useful purpose to make a summary of all the evidence in the case at bar. To do so would only unduly prolong this opinion. The basic facts are not substantially in dispute. In the light of the record before us, we think it suffices to say that there was ample competent evidence from which the Tax Court could reasonably determine that petitioner was not entitled to a tax-exempt status as claimed; that it did have net taxable earnings during each of the years in question; and that petitioner was prop-

erly subjected to the added penalty imposed.

In 1922, Central College of Chiropractic was organized as a charitable "educational" association under the laws of the State of Missouri. Subsequently thereto, its name was duly changed to Cleveland School of Chiropractic and as late as 1952 to Cleveland Chiropractic College. Dr. Carl S. Cleveland, Sr., was the President of each corporation. Prior to 1948, those entities were admittedly operated by Dr. Cleveland so that he "treated the income of (the) College as his personal income, made his personal income tax returns upon the receipts of the College and took as deductions all of the expenses." In other words, he then admittedly treated the College as his own personal business. Until 1948 the College had never filed an income tax return. It owned no real estate. It leased the property in which it did business from Dr. Cleveland, Sr.

In 1948, when it began to prosper because of an increase in enrollment of veterans under the "G. I. Bill of Rights," (58 Stat. 284) the College sought a tax-exempt status under Section 101(6), *supra*. The exemption was granted but retroactively revoked in November 8, 1956, pursuant to Section 3791(b) I.R.C. 1939.

Prior to 1948, petitioner's income and expense records were negligible. In that year it established a double-entry set of books. Notwithstanding, the evidence is that Dr. Cleveland continued to operate petitioner's business affairs, up until 1952, much as he had previously.

In 1950, another chiropractic school, Ratledge School, in Los Angeles, California, was acquired by petitioner. This school has never been, and is not now, an organization exempt from federal income tax. It was respondent's contention that Dr. Cleveland personally acquired the school for himself, rather than for petitioner. The Tax Court found that petitioner was the purchaser thereof.

When the deficiency income tax assessment here considered was made against petitioner a similar deficiency assessment was also made against Dr. Carl S. Cleveland, Sr., personally. On review, both such assessments were consolidated for trial before the Tax Court. Two issues raised in relation to Dr. Cleveland's personal income tax deficiency as assessed by respondent * * * namely, withdrawals from the College that respondent claimed Dr. Cleveland omitted to include as gross receipts in his personal income tax return * * * $19,006.41 in 1947, and $28,140.62 in 1951 * * * were determined against respondent. Such determination would *a priori* increase appellant's tax liability in those years. Dr. Cleveland, Sr., has not appealed from that portion of the Tax Court decision sustaining, in part, respondent's deficiency assessment as made against him which was primarily based on funds he received ostensibly belonging to petitioner.

The argument is here made that a "careful audit made by J. R. Gilman," petitioner's auditor, "was introduced into evidence which established that the only year in which there was a profit" earned by petitioner "was 1949" and that it is shown by that exhibit "that petitioner sustained an operating loss in the years 1950–1953." Hence petitioner states that on the strength of such audit alone it is established that the Tax Court erred in its opinion where it is said that "the College has adduced no evidence to overcome the presumption of correctness of Respondent's findings" that it did have taxable earnings in 1948, 1950 and 1951. For the making of that statement found in the Tax Court's memorandum, petitioner asserts, its decision must be reversed.

■ We shall not follow petitioner in all the ramifications of its argument respecting the quoted statements, *ante*. What the Tax Court said was this:

"The College has argued that no part of its net earnings could inure to anyone since 1949 was the only year in which it had a net profit. Re-

spondent determined that the College had net earnings in each year from 1948 through 1951. This determination is presumptively correct. Since the College has failed to adduce any evidence to show this determination was erroneous, its contention must fail.

"The College also contends that Carl did not withdraw any sums in excess of his salary and valid obligations due him. This the College failed to prove. On the books of the College, a drawing account was set up for Carl. Into this account went some of the expenditures of the College as well as those for Carl's personal benefit. From the evidence in the record, there is no way to determine what was spent for the College and what was spent for Carl personally. Furthermore, the drawing account, for the most part, included only amounts disbursed by check.

"It was the practice of the College to turn over all cash receipts to Carl for deposit in the College's bank account. Gilman, the college accountant, testified that at times Carl used part of these cash receipts for personal expenses, and that these sums would not be shown in the drawing account. He also testified, and it seems very evident, that it was sometime in 1952 before there was any effective control over cash. This was a period of time after Carl had gone to Los Angeles to take over the Ratledge School.

"On the record before us, the College has failed to prove that no part of its net earnings inured to the benefit of any individual during the years 1948 through 1951. Accordingly, we hold that it is not entitled to an exemption from corporate income tax for those years."

The cases are legion which state that the burden of proof is on the taxpayer; that the Commissioner's assessment is *prima facie* or presumptively correct and that such presumption is not "overcome by mere book entries, mere statements in

the tax returns, the mere unsupported testimony of the taxpayer, (or) mathematical calculations involving uncertain facts." Mertens, Law of Federal Income Tax, § 50.61, pp. 122–124. Only an astute literalist would undertake to torture the memorandum of the Tax Court in the case at bar and singularly premise reversible error on the statement, *ante,* when it is manifest that the ultimate decision of that Court was not singularly premised thereon.

The Tax Court found that petitioner was organized for educational purposes and that its charitable "corporate form was not a sham or unreal" as respondent originally treated with it in making his deficiency assessment against petitioner and Dr. Cleveland. However, it upheld respondent's revocation of petitioner's "tax exempt" character because petitioner "failed to prove that no part of its net earnings inured to the benefit of any individual during the years 1948 through 1951." Convincing and decisive competent evidence appears in the record here to sustain such conclusion. Petitioner's argument that such revocation of tax-exempt status was wrong revolves around its interpretation of the word "inured", found in Section 101(6) of the Internal Revenue Code of 1939. We deem such argument insubstantial, if not wholly frivolous, in the light of this Court's opinions in Northwestern Jobber's Credit Bureau v. C. I. R., 37 F.2d 880, 883 (8 Cir., 1930); Northwestern Municipal Association v. United States, 99 F.2d 460, 463 (8 Cir., 1938); Duffy et al. v. Birmingham et al., 190 F.2d 738 (8 Cir., 1951); Boman v. C. I. R., 240 F.2d 767, 69 A.L.R.2d 864 (8 Cir., 1957). See also, National Chiropractic Ass'n v. Birmingham, 96 F.Supp. 874, 881 (D.C.N.D.Iowa, 1951); Texas Trade School v. C. I. R., 272 F.2d 168 (5 Cir., 1959).

In its brief petitioner says its "bookkeeping system was poor until 1949." Its auditor, employed in 1949 to set up a complete set of books, testified they were not complete because there was no effective control over cash income as reflected in petitioner's books until 1952.

**207**

Section 293(a) of the Internal Revenue Code of 1939 provided a penalty of "5 per centum of the total amount of (a) deficiency * * * due to negligence." Petitioner under the record here could not have sustained the burden of proof cast upon it to prove that the Commissioner wrongfully determined the penalty assessed against it as authorized by Section 293(a), supra. Birmingham Business College, Inc. v. C. I. R., 276 F.2d 476 (5 Cir., 1960); Boynton v. Pedrick, 228 F.2d 745 (2 Cir., 1955).

The decision of the Tax Court is in all respects

Affirmed.