KEVIN W. GILLAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gillan v. Commissioner
Docket No. 31052-85.
United States Tax Court
T.C. Memo 1988-321; 1988 Tax Ct. Memo LEXIS 349; 55 T.C.M. (CCH) 1339; T.C.M. (RIA) 88321; July 27, 1988. Kevin W. Gillan, pro se. Monica S. Melgarejo, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: In his notice of deficiency, respondent determined deficiencies in petitioner's Federal income tax and additions to *350 tax as follows: Additions to Tax - Section
Year
Deficiency
[1] 6651(a) 6653(a)
6653(a)(1)
6654
1980
$ 148,840
$ 37,210
$ 7,442
$ --  $ 9,482
1981
14,354
3,588
-   718
1,097
Respondent determined further that an addition to tax under section 6653(a)(2) applies for 1981 in the amount of 50 percent of the interest due on an underpayment of $ 14,354. After concessions by petitioner, [2] the issues for decision are: (1) Whether petitioner was denied a fair trial; (2) whether petitioner received the unreported income determined by respondent; (3) whether respondent violated Rule 6(e) of the Federal Rules of Criminal Procedure; (4) whether this Court erred in admitting an exhibit; (5) whether petitioner is entitled to a deduction for the value of assets forfeited to the United States; and (6) whether petitioner is liable for additions to tax for negligence. *351 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Kirkland, Washington, when he filed his petition herein. He failed to file Federal income tax returns for the years at issue. During all of 1980, and through February 11, 1981, petitioner was a partner with another individual in an enterprise that manufactured and distributed lysergic acid diethylamide (LSD). He was arrested by agents of the Federal Drug Enforcement Administration on February 11, 1981, and pled guilty later that year to running a continuing criminal enterprise in violation of 21 U.S.C. sec. 848 (1982). The underlying criminal activity of the enterprise was the manufacture and sale of LSD. Petitioner forfeited all the assets that he derived from the manufacture and sale of LSD to the United States pursuant to the provisions of 21 U.S.C. sec. 848(a)(2) (1982). Petitioner was in Federal custody and did not have his business records from the time he was arrested until April 15, 1982. Respondent determined that petitioner *352 had received the following amounts of unreported income from the enterprise: 1980
1981
Gross Sales
$ 1,443,200
$ 182,600
Less - Manufacturing Cost  524,800
66,400
- Distribution Exp.     300,000
37,962
Net Income
$ 618,400  $ 78,238 Petitioner's 50% share
$ 309,200  $ 39,119 Respondent based his determination of the enterprise's gross sales on his determination of the following amounts of pill production: Pills Produced
Month
1980
1981
January
500,000
500,000
February
500,000
166,000
March
500,000
--
April
500,000
--
May
500,000
--
June
250,000
--
July
250,000
--
August
250,000
--
September
500,000
--
October
500,000
--
November
500,000
--
December
500,000
--
Total    5,250,000
666,000
Respondent determined that the pills were packaged in containers of 4,000 which were then sold for $ 1,100 each. Respondent determined that each container of pills cost $ 400 to manufacture and that distribution expenses totaled $ 300,000 for 1980, which represented 20.79 percent of gross sales. Respondent applied that percentage to the gross sales for 1981 to determine *353 the distribution expenses for that year. Petitioner was served notice on September 16, 1987, that this case was set for trial on February 16, 1988. When the case was called on that date, petitioner requested a continuance. This Court denied the request. OPINION Fair Trial
Petitioner's initial argument is that he was denied a fair trial by this Court's refusal to grant a continuance, and due to this Court's failure to subpoena witnesses for him.
a. Continuance
Petitioner was served notice on September 16, 1987, that this case was set for trial on February 16, 1988. The first paragraph of the pretrial order that accompanied the notice stressed that "Absent a strong showing of good cause, motions for continuance will generally be considered dilatory and will be denied unless filed with the Court in Washington, D.C., at least 30 days before the date set for the call of the calendar (see Rule 134 of the Rules of Practice and Procedure of this Court)." (Emphasis in original.) Petitioner requested a continuance on February 16, 1988, when this case was called at the calendar call for a trial session beginning on that date. The basis for his request was that *354 he had failed to subpoena witnesses that he believed he needed to present his case. This Court denied the motion, emphasizing that petitioner had been notified in September of 1987 that this case was set for trial on February 16, 1988. We have reconsidered our denial of the motion, and conclude that it was proper. As we emphasized at trial, petitioner had five months to prepare this for trial. The pretrial order warned him that motions for continuance would generally be denied unless made 30 days before February 16, 1988. Armed with that knowledge, petitioner should have taken immediate steps to prepare for trial so that if he encountered difficulties, he would have time to resolve them. We note that subpoenas can be issued well in advance of trial and that this is therefore a matter that petitioner could easily have taken care of earlier. See Rule 147. Petitioner nevertheless waited until after this case was called to request a continuance. We do not believe that this reflects a diligent effort on his part to properly prosecute this case.
b. Failure to Subpoena Witnesses
Petitioner's argument that he was denied a fair trial due to this Court's failure to subpoena *355 witnesses for him appears to be based on the mistaken premise that he has a constitutional right to have this Court pay his witness fees. Such is not the case. Civil litigants such as petitioners before this Court enjoy no constitutional right to have the Federal government pay their litigation expenses. See Potashnick v. Port City Construction Co.,609 F.2d 1101, 1118 (5th Cir. 1980), cert. denied 449 U.S. 820 (1980); Frazier v. Commissioner, 91 T.C.     (July 7, 1988) (slip opinion at pages 13-14). As this Court's rules specifically provide, parties who request subpoenas are responsible for having them served, and the party who summons a witness is responsible for paying the fees and mileage to which the witness is entitled. Rules 147, 148(c). Rule 6(e)
Although petitioner argues that respondent used grand jury material in violation of Rule 6(e) of the Federal Rules of Criminal Procedure, he produced no evidence to support his claim. [3] Gerald Soltis, the revenue agent who computed petitioner's unreported income, denied having used grand jury material in determining petitioner's unreported *356 income, and identified a specific nongrand jury source for each of the elements that he used in determining that income. Respondent determined that all of petitioner's unreported income came from his illegal enterprise. Soltis testified that he computed the enterprise's gross sales based on a statement given by one of the enterprise's employees on February 11, 1981, the night the employee was arrested, to agents of the Federal Drug Enforcement Administration. He testified further that he contacted petitioner in prison to determine the enterprise's manufacturing costs and distribution expenses. He explained that he based his determination of the enterprise's manufacturing costs and distribution expenses on petitioner's statements that manufacturing costs were approximately $ 400 per container of pills and that distribution expenses were approximately $ 300,000. Finally, Soltis stated that he attributed one-half of the enterprise's net income for 1980 and 1981 to petitioner. None of the *357 sources that Soltis identified compromises a grand jury proceeding. In these circumstances, we conclude that evidence does not support petitioner's claim that respondent used grand jury material in violation of Rule 6(e) of the Federal Rules of Criminal Procedure. Admission of Exhibit
Petitioner argues that this Court erred in admitting exhibit 4-D. In admitting that exhibit over petitioner's objections, we specified that we were admitting it for the limited purpose of showing the basis for one of the alternative methods used by respondent in initially determining petitioner's unreported income. We noted that respondent had ultimately chosen to base the notice of deficiency on another method of determining petitioner's unreported income, and opined at the time that the exhibit therefore "has very limited probative value for anything." We have in fact not relied on the exhibit in reaching our decision herein. We accordingly need not address petitioner's argument that the exhibit was improperly admitted. See Rule 160; Fed. R. Evid. 103(a). Unreported Income
The next issue for decision is whether *358 petitioner received the unreported income determined by respondent for the years at issue.
a. Burden of Proof
At the outset, we must address petitioner's argument that respondent bears the burden of proof on this issue. Petitioner cites to Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), in support of his argument. In that case, respondent had determined that a taxpayer had received unreported income for an illegal activity. Respondent failed to offer any evidence linking the taxpayer to the illegal activity, however, or to substantiate his computations of the unreported income that the taxpayer had allegedly received. In those circumstances, the Ninth Circuit held that respondent's deficiency determination enjoyed no presumption of correctness. As respondent points out on brief, the Ninth Circuit has made it clear that the rationale of Weimerskirch does not apply to cases such as the one before us in which clear evidence links a taxpayer to an illegal income-producing activity. Adamson v. Commissioner,745 F.2d 541, 547 (9th Cir. 1984), affg. T.C. Memo. 1982-371; *359 Weimerskirch v. Commissioner, 596 F.2d at n. 7. Petitioner's guilty plea to running a continuing criminal enterprise establishes his involvement in an illegal income-producing activity. One of the enterprise's employees testified that it produced an average of 500,000 LSD pills each month from January of 1980 through February 11, 1981, except for June and July of 1980 when the production was interrupted for a move. He testified further that the pills were packaged in containers of 4,000 which sold for $ 1,100, and stated that petitioner maintained a comfortable life style during the years at issue and dealt extensively in cash. In sum, the evidence provides a rational basis to support respondent's determination that petitioner received unreported income from an illegal activity. We accordingly hold that petitioner bears the burden of going forward as well as the burden of proof in this case. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a).
b. Deficiency
Soltis testified and explained the factors he used in determining the amount of petitioner's unreported income, such as the number of pills the enterprise produced, how they were packaged, *360 and the amount for which they were sold, and such factors were largely confirmed by the testimony of a witness who had worked for the enterprise. The only conflict between respondent's determinations of petitioner's unreported income and the evidence introduced at trial relates to the number of pills produced during June, July, and August of 1980. The witness who had worked for the enterprise testified that no LSD pills were produced during June and July of 1980, and that an average of 500,000 pills a month were produced during the balance of 1980. Respondent determined that 250,000 pills a month were produced in June, July, and August of 1980, and that 500,000 pills were produced in each of the other months. We found the witness's testimony to be credible, and accordingly conclude that respondent's determinations of petitioner's unreported income should be adjusted as follows to reflect the production in 1980 of 250,000 [4] fewer LSD pills than he determined: 1980 Income
5,000,000 pills / 4,000 pills/container =
1,250 containers
Gross Sales: 1,240 containers x $1,100 =
$ 1,375,000 Manufacturing Cost: 1,250 containers x $ 400 =
500,000 Distribution Expense (21.82%)
300,000 Net Income
$ 575,000 Petitioner's One-Half Share
$ 287,500 *361 The adjustment to 1980 increases the percentage of the enterprise's gross sales represented by its distribution expense. [5] The application of that increased percentage to 1981 results in an increase in the enterprise's distribution expense, and a decrease in petitioner's net income as determined by respondent, as follows: 1981 Income
666,000 pills / 4,000 pills/container = 166 containers
Gross Sales: 166 containers x $ 1,100 =
$ 182,600
Manufacturing Cost: 166 containers x $ 400 =
66,400
Distribution Expense: $ 182,600 x 21.82% =
39,844
Net Income
$ 76,356 Petitioner's One-Half Share
$ 38,178 Forfeiture Deduction
Petitioner's next argument is that he is entitled to a deduction for the value of assets that he derived from the manufacture and sale of LSD, and which he forfeited to the United States. We *362 disagree. The forfeiture of assets used in an illegal enterprise results in a loss deductible, if at all, under section 165 rather than an expense deductible under section 162. Holt v. Commissioner,69 T.C. 75, 78 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980). As has been recognized previously, losses incurred in illegal drug trafficking are not deductible under section 165. Holt v. Commissioner, supra at 79-81; Styron v. Commissioner,T.C. Memo. 1987-25. See also Wood v. United States, an unreported case ( E.D. La. 1988, 62 AFTR 2d    , 88-2 USTC par. 9399). Negligence
The final issue for decision is whether petitioner is liable for the additions to tax for negligence determined by respondent. Petitioner bears the burden of proving that the additions, which were determined by respondent in his notice of deficiency, do not apply. Barton v. Commissioner,424 F.2d 1295, 1296 (7th Cir. 1970), affg. per curiam T.C. Memo. 1969-46, cert. denied 400 U.S. 949 (1970); Luman v. Commissioner,79 T.C. 846, 860-861 (1982). Negligence *363 under section 6653(a) is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioner's position is that he failed to report his income for the years at issue because he lacked his business records on the dates his Federal income tax returns for the years at issue were due, and therefore could not determine his income. We found as a fact that petitioner did not have his records until April 15, 1982. There is no evidence in the record that petitioner lacked his records after that date, and petitioner failed to offer any explanation of why he neglected to file returns after that date to report his income for the years at issue. In these circumstances, we are unable to conclude that petitioner was not negligent in failing to report his income from his illegal enterprise. We accordingly hold that petitioner has failed to prove that he is not liable for the additions to tax for negligence for both of the years at issue. We hold further that he has failed to prove that the entire underpayment for 1981 is not attributable to negligence for purposes *364 of the section 6653(a)(2) addition. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Petitioner failed to address on brief the additions determined by respondent under secs. 6651(a) and 6654. In these circumstances, we consider petitioner to have conceded the applicability of those additions. Rule 151(e); Strasser v. Commissioner,T.C. Memo. 1986-579 n. 13 affd. without published opinion 838 F.2d 1203↩ (2d Cir. 1987). 3. See Greater Display & Wire Forming, Inc. v. Commissioner,T.C. Memo. 1988-231, for a general discussion of Fed. R. Crim. P. 6(e)↩. 4. This amount reflects production of 250,000 pills less than respondent determined for each of June and July, and production of 250,000 pills more than respondent determined for August. ↩
5. Petitioner presented no evidence concerning his manufacturing or distribution costs which would conflict with respondent's determination. ↩